IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT M. GUMM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 08-CV-6335 |
| v. | ) |
| VILLAGE OF PARK FOREST, DEPUTY | ) JUDGE DAVID H. COAR |
| CHIEF CLIFFORD BUTZ, and DEPUTY | |
| CHIEF MICHAEL McNAMARA, | |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert M. Gumm ("Plaintiff" or "Gumm") brings an action against Defendants the Village of Park Forest, Deputy Chief Clifford Butz, and Deputy Chief Michael McNamara ("Defendants") alleging false arrest in violation of 42 U.S.C. § 1983 (Count II), and Illinois state law claims of malicious prosecution (Count I), respondeat superior (Count III), and indemnification (Count IV). Before the Court now is Defendants' motion for summary judgment. For the reasons stated below, Defendants' motion is **GRANTED IN PART.**

I.     **FACTUAL BACKGROUND**

The following facts are undisputed unless otherwise noted. Plaintiff was hired by the Village of Park Forest ("the Village") as an Information Technology Technician on August 20, 2007 (Defendant's Rule 56.1 Statement of Material Facts ("DSOF") ¶ 1). His immediate superior, Craig Kaufman, is the Information Technology Administrator for the Village (DSOF ¶ 2; Kaufman Dep. 6:9-10, Apr. 6, 2009). When Plaintiff was hired, the Village provided him with a computer and the Microsoft Windows Vista operating

1

system program to install on his computer (DSOF ¶ 5; Kaufman Dep. 38:20-39:18). Prior to Gumm's employment, the Village had purchased the Windows Vista operating system program from Microsoft at the price of $150,000 for 5,000 activations (Kaufman Dep. 32:3-6). Microsoft provided the program to the Village on a DVD that included a license key (Kaufman Dep. 30:3-7; 32:7-23). The license key, which was written on the DVD case, enables users to access the Vista program (Kaufman Dep. 36:18- 37:6; 33:5-17). At the time Gumm was hired, only 12 out of the 5,000 activations of Vista program had been used (DSOF ¶ 8). Kaufman provided Gumm with a copy of the Microsoft Vista DVD with the key code written on the DVD case (Kaufman Dep. 38:20-39:18). As of November 7, 2007, Kaufman and Gumm were the only Village employees who had copies of the DVD and access to the key code (DSOF ¶ 10). [1]

Kaufman claims that, on the morning of November 7, 2007, Gumm told him that he intended to download a made-for-TV movie onto his Village computer so that he could sell it (Kaufman Dep. 26:12-18; 49:23-50:11). Gumm denies ever having had this conversation with Kaufman. Kaufman claims, however, that after his alleged conversation with Gumm, he grew suspicious and checked the Microsoft website to see how many of the 5,000 Vista activations were used, as he periodically did (Kaufman Dep. 52:11-20; 53:17-23). When Kaufman checked the Microsoft website, he believed it stated that only 13 out of the 5,000 activations remained available (Kaufman Dep. 53:21-54:15). In reality, only 13 activations had been used at that time—the 12 that had been used before Gumm was hired and Gumm's own activation (Kaufman Dep. 54:4-6). A

---

[1] Kaufman admits that Carl Sund, the former Village employee who served as IT technician before Gumm, may still have access to the key code if he had written it down and taken it with him when his employment ended (Kaufman Dep. 36:8-17; 38:14-19).

change in the Microsoft website had caused Kaufman to misread the number of used activations, and he did not realize his error until one or two weeks later (Plaintiff's Rule 56.1 Statement of Material Facts ("PSOF") ¶ 28; Kaufman Dep. 53:20-54:15).

Mistakenly believing that 4,874 activations of the Vista program were missing on November 7, 2007, Kaufman contacted his supervisor, Mary Dankowski, who initiated a meeting with Deputy Chief Butz and Deputy Chief McNamara (DSOF ¶¶ 13-14). During this meeting, Dankowski informed Butz and McNamara of the missing applications (DSOF ¶ 15). Kaufman explained his suspicions that Gumm was responsible for the applications' disappearance because of the conversation he had had with Gumm earlier that day about using his Village computer to download and sell movies (DSOF ¶ 16). At that point, Butz and Kaufman went to Gumm's office to examine his computer (DSOF ¶ 17). The parties dispute what, exactly, Butz and Kaufman found on Gumm's computer. Butz and Kaufman claim that Gumm's computer contained materials that violated the Village's computer policy including pornography and a file-sharing program that could have enabled Gumm to download and share the Vista applications (Kaufman Dep. 60:11-22; Butz Dep. 45:1-23, Apr. 9, 2009). Gumm adamantly denies ever downloading pornography onto his Village computer (Gumm Dep. 74:11-24, Mar. 12, 2009). In addition, Gumm claims that Kaufman told him he could use his computer for personal use, which included downloading games (Gumm Dep. 27:4-29:1). After searching Gumm's computer, Butz confiscated the computer and took it to the police station (DSOF ¶ 20). Shortly thereafter, Deputy Chief McNamara arrested Gumm and brought him to the station for questioning (DSOF ¶ 21; McNamara Dep. 56:23-57:1, Apr. 9, 2009; Butz Dep. 53:18-23).

When Gumm arrived at the station, McNamara explained to Gumm his Miranda rights, which Gumm understood and waived (DSOF ¶¶ 23-24). Gumm admits that, while he was questioned, McNamara and Butz told him that they wanted his copy of the Microsoft Vista DVD, and Gumm told McNamara and Butz that the DVD was at his home (DSOF ¶¶ 27, 29). McNamara and Butz asked Gumm's wife to retrieve the DVD (Gumm Dep. 75:17-18). They explained that if she brought the DVD to the police, the police would drop all charges against Gumm and would release him (DSOF ¶ 36). Gumm claims that his wife did not share this information with him until after he was released from custody (Gumm Dep. 79:15-22). Gumm's wife was unable to find the DVD (DSOF ¶ 39). When Gumm returned home the next day, he found the DVD where he always kept it— between two books on the bookshelf in his living room (Gumm Dep. 76:7-77:8).

Although Gumm knew where the DVD was located in his home, and he knew that he had not shared the Vista applications, he offered several possible explanations for the missing applications while he was questioned. At one point, he suggested that the DVD may have been stolen when someone broke into his car (DSOF ¶ 43). However, Butz and McNamara obtained a car theft report from the Chicago Police Department and determined that the theft had occurred before Gumm was hired by the Village (DSOF ¶¶ 44-45). Gumm then told Butz that there had been another theft of his car, but when Butz checked with the Chicago Police Department, there was no report of a second theft (DSOF ¶¶ 50-51). According to McNamara, Gumm suggested, at another point, that the applications could have been accidentally downloaded (McNamara Dep. 62:2-18). McNamara and Butz also claim that Gumm told them he downloaded the Windows Vista

program to his father-in-law's computer (McNamara Dep. 62:2-63:6). Gumm claims that he neither downloaded the Vista program to his father-in-law's computer nor ever said that he had (Gumm Dep. 52:24-53:15).

After questioning Gumm, on November 8, 2007, Butz and McNamara collectively decided to charge Gumm with computer tampering (PSOF ¶ 18). Butz signed the criminal misdemeanor complaint, which alleged that Gumm committed the offense of computer tampering, "in that he knowingly and without the authorization of the computer's owner, the Village of Park Forest, acted in excess of that authority granted to him causing to be accessed a computer or any part thereof, or a program or data to wit: Microsoft Vista a program owned by the Village of Park Forest to be accessed," in violation of 720 Ill. Comp. Stat. 5/16D-3(a)(1) (2008) (PSOF ¶ 20; Def.'s Mem. Supp. Summ. J., Ex. I, Misdemeanor Compl). Although Butz testified during his deposition that he arrested Gumm for the missing Vista applications (Butz Dep. 55:20-24), Defendants now claim that Gumm was charged with computer tampering because he was unable to produce the DVD, not because of the missing Vista applications (DSOF ¶¶ 51-52).

Approximately one or two weeks after Gumm's arrest, Kaufman informed Butz that the Vista applications were not, in fact, missing, and Butz relayed this information to McNamara (PSOF ¶ 30). Nevertheless, the charges were not dismissed, and Gumm appeared in court several times from November of 2007 through May 1, 2008 (Def.'s Mem. Supp. Summ. J., Ex. G, Court Call Sheet). On May 1, 2008, the state's attorney told the judge that she was unable to proceed to trial because her witness, Craig Kaufman, was not present (DSOF ¶¶ 54-55). Accordingly, the judge dismissed the case

with leave to reinstate (Def.'s Mem. Supp. Summ. J., Ex. G, Court Call Sheet). On the day his case was dismissed, Gumm saw McNamara in court and saw him go into a private room with the state's attorney (Gumm Dep. 19:24-20:5; 20:12-15). McNamara admits that he spoke with the state's attorney and claims that he urged her to go to trial because the DVD was still missing (McNamara Dep. 98:8-99:4). The case against Gumm was never reinstated.

## II. LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 252.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to

determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

**III. ANALYSIS**

    **a. False Arrest**

Gumm claims that Defendants Butz and McNamara falsely arrested him in violation of 42 U.S.C. § 1983. Defendants argue, however, that they had probable cause to arrest Gumm. The existence of probable cause is an absolute defense to false arrest claims under § 1983. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Probable cause exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007) (per curiam); *see also Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673 (7th Cir. 2007). Probable cause "requires more than a bare suspicion of criminal activity;" however evidence sufficient to support a conviction is not necessary. *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (quoting *United States v. Burrell*, 963 F.2d 976, 986 (7th Cir. 1992)); *see also Holmes*, 511 F.3d at 679.

Courts evaluate probable cause objectively by considering "the facts as they reasonably appeared to the arresting officer, seeing what he saw, hearing what he heard." *Id.* This evaluation depends on what the officer knew at the time of the arrest, "not whether [he] knew the truth or whether [he] should have known more." *Washington v. Haupert*, 481 F.3d 543, 547 (7th Cir. 2007); *see also Haywood v. City of Chicago*, 378

F.3d 714, 717 (7th Cir. 2004) ("[W]hat an arresting officer does not know is inadmissible to show that he had probable cause for the arrest-otherwise hindsight would validate every arrest of a person who turned out to be a criminal.") (internal citation and quotations omitted).

Defendants Butz and McNamara had probable cause to arrest Gumm, thus defeating Gumm's false arrest claim. Defendants decided to arrest Gumm after speaking with Kaufman (the Village's IT administrator) and Dankowski (Kaufman's supervisor). Kaufman and Dankowski reported that a large number of the Village's Microsoft Vista applications were missing (DSOF ¶ 15). In addition, Kaufman relayed his suspicions that Gumm was responsible, based on an alleged conversation during which Gumm mentioned downloading movies to his Village computer in order to sell them (DSOF ¶ 16). This Court has held that "so long as a reasonably credible witness or victim, including fellow law enforcement personnel, supplies information to an officer that someone has committed a crime, the officer may rely upon that information and is under no obligation to investigate further." *Johnson v. City of Chicago*, No. 05 C 6545, 2009 WL 1657547, at *5 (N.D. Ill. June 9, 2009); *see also McWilliams v. McWilliams*, No. 06 C 3060, 2007 WL 1141613, at *6 (N.D. Ill. Apr. 16, 2007). Accordingly, even though Gumm denies that the alleged conversation with Kaufman ever occurred, Defendants appropriately relied on the reports provided by Kaufman and Dankwoski when forming probable cause.

In addition to the reports that the Vista applications were missing and that Kaufman suspected Gumm was responsible, Defendants' search of Gumm's computer contributed to their finding of probable cause to arrest him. Despite the parties' dispute

as to the materials found on Gumm's computer, at a minimum, Gumm's computer contained a file-sharing program that could have enabled him to download and share the Vista applications (Kaufman Dep. 60:11-22; Butz Dep. 45:1-23). Armed with the reports by Kaufman and Dankowski, along with the evidence on Gumm's computer, Defendants had probable cause to arrest Gumm. Moreover, Defendants' later discovery that the applications were not, in fact, missing, does not negate their finding of probable cause since probable cause is evaluated at the time of the arrest. *See Haupert*, 481 F.3d at 547. Because probable cause is an absolute defense to a claim for false arrest, summary judgment on Gumm's false arrest claim (Count II) is granted.

### b. State Law Claims

Having granted summary judgment for Defendants on Plaintiff's § 1983 false arrest claim, the Court declines to exercise supplemental jurisdiction over the state law claims of malicious prosecution (Count I), respondeat superior (Count III), and indemnification (Count IV). Those claims are hereby dismissed without the Court expressing any opinion as to their merit.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED IN PART.** The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses them without expressing any opinion as to their merit.

Enter:
/s/ David H. Coar

_____

David H. Coar
United States District Judge

**Dated:** October 19, 2009